## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TRIDON INDUSTRIES, INC., a Pennsylvania corporation, TRIDON HOLDINGS, LLC, a Pennsylvania limited liability corporation, and TRIDON LEASING, LLC, a Pennsylvania limited liability company, | : : : : : : : | |
| Plaintiffs, | : : | |
| v. | : : | C.A. No. 12-1070-LPS |
| WILLIS CHEVROLET, INC., a Delaware corporation, and THE ESTATE OF ROBERT H. POORE, | : : : : | |
| Defendants. | : | |

---

D. Miika Roggio, Michael I. Silverman, SILVERMAN, MCDONALD & FRIEDMAN, Wilmington, DE

    Attorneys for Plaintiffs.


Marc S. Casarino, Sean A. Meluney, WHITE AND WILLIAMS, LLP, Wilmington, DE

    Attorneys for Defendants Willis Chevrolet, Inc. and The Estate of Robert H. Poore.

---

## MEMORANDUM OPINION




April 1, 2014
Wilmington, Delaware.

STARK, U.S. District Judge:

Plaintiffs Tridon Industries, Inc., Tridon Holdings, LLC, and Tridon Leasing, LLC, (collectively, "Tridon") initiated an action alleging negligence by Defendants Willis Chevrolet, Inc. and the Estate of Robert H. Poore (collectively, "Willis" or "Defendants"), as well as breach of contract by Selective Way Insurance Company ("Selective").[1]  (D.I. 1)  The parties stipulated to a dismissal of Tridon's claims against Selective, so only Tridon's negligence action against Willis remains.  (D.I. 49)

At the close of discovery, Defendant Willis filed three motions: (1) a motion *in limine* to Preclude Reference to Defendants' Insurance Coverage (D.I. 34); (2) a motion to strike expert testimony (D.I. 36); and (3) a motion for summary judgment.  (D.I. 38)  The Court will deny without prejudice Defendant Willis' Motion *in limine* to Preclude Reference, as it is premature.[2] The two remaining motions are addressed further below.

## BACKGROUND

The complaint arises out of a collision between Robert Poore, an employee of Willis Chevrolet, and a specially modified box truck ("the Truck") owned by Tridon.  (D.I. 1 at ¶¶ 6-8; D.I. 7 at ¶ 3; *see also* D.I. 39-2 at A1)  Both vehicles were damaged as a result of the collision. (D.I. 1 at ¶ 10; D.I. 7 at ¶ 3)  The Truck, however, was not used by Tridon for simple transport of freight or goods; rather, Tridon purchased and modified the Truck to be its primary method of installing foam insulation in the masonry foam and tank fill division of its spray product

---

[1] It appears to be undisputed that the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.  (D.I. 1 ¶ 5)

[2] The scheduling order provides that motions *in limine* are not to be separately filed and should be set forth in the proposed pretrial order.  (D.I. 10 ¶¶ 11-12)

1

business. (D.I. 37-2 at A11-12; *see also id.* at A34-38)  Specifically, Tridon retrofitted the Truck

with a variety of special equipment fixed to the engine and box car (such as a power generator,

spray equipment, and tanks for holding the raw material) in order to convert it into a mobile

platform for foam installation. (D.I. 37-2 at A50-53; *see also* D.I. 42-1 at A1-4)  The Truck also

contained non-fixed equipment used by Tridon personnel when performing masonry foam

installation. (D.I. 37-2 at A46-47)

After the accident, Tridon contacted its insurance provider, Selective, about

compensation. (D.I. 48)  Tridon then contacted Willis' insurance provider, Uttis, and, between

October 10, 2010 and February 14, 2011, made several claims in conjunction with the accident.

(D.I. 39-8 at A168)  It is undisputed that the Truck was damaged; it is further undisputed that

both Selective and Willis (through its insurance provider) provided some payment to Tridon.

(*See* D.I. 1; D.I. 6; D.I. 7; *see also* D.I. 39-2 at A5)  The parties do not, however, agree as to the

extent of the damage – and thus insurance liability – to the equipment on the Truck; nor do they

agree as to the scope of liability for lost business profits as a result of the damage to the Truck

and alleged damage to the equipment. (*See id.*)

Unsatisfied with the amount paid by the insurance companies, Tridon filed this action

against Willis alleging that Willis remains liable for the equipment damage, business expenses,

and business losses caused by the negligent conduct of its employee, Robert Poore. (D.I. 1)

Willis disputes these allegations. (D.I. 7)

In its Motion for Summary Judgment, Willis claims that: (1) Tridon has not provided the

requisite level of proof that the equipment was damaged, and (2) its claimed business losses are

too speculative. (D.I. 38)  Willis also moves the Court strike expert testimony that Tridon seeks

2

to use in proving its business loss claim on the basis that it fails the threshold test for admissibility.  (D.I. 36; D.I. 37)

For the reasons discussed below, the Court will grant in part and deny in part Willis' motion for summary judgment, and deny Willis' Motion to Strike.

## LEGAL STANDARDS

### I.    Motions for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 415 U.S. 574, 586 n. 10 (1986).  A party asserting that a fact cannot be or, alternatively, is genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B).  If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 415 U.S. at 587 (internal quotation marks omitted).  The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

3

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586–87; *see also Podohnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 411 U.S. 242, 247–48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 411 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

## II.  *Daubert* **Motions**

Motions to exclude evidence are committed to the Court's discretion. *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 749 (3d Cir. 1994). The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence and the Supreme Court's decision in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Pursuant to Rule 702, in order to be admissible, expert testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." The Supreme Court has assigned "to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task

4

at hand." *Daubert*, 509 U.S. at 597. Thus, expert testimony shall be admitted at trial if:

"(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of

reliable principles and methods, and (3) the witness has applied the principles and methods

reliably to the facts of the case." Fed. R. Evid. 702; *see also Kumho Tire Co., Ltd. v.

Carmichael*, 526 U.S. 137, 141 (1999). The Third Circuit has described these requirements as

"three distinct substantive restrictions on the admission of expert testimony: qualifications,

reliability, and fit." *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000).

Rule 702 embodies a "liberal policy of admissibility." *See Pineda v. Ford Motor Co.*,

520 F.3d 237, 243 (3d Cir. 2008) (internal citations omitted). Nonetheless, the burden is placed

on the party offering expert testimony to show that it meets all of the standards for admissibility.

*See Daubert*, 509 U.S. at 592 n. 10; *In re TMI Litig.*, 193 F.3d 613, 663 (3d Cir. 1999).

## DISCUSSION

### I.    Willis' Motion to Strike

Tridon grounds its damages claim for business losses resulting from the accident in the

form of a report prepared by economic experts. (*See* D.I. 37-2 at A1-4) Willis asks the Court to

exclude the experts' report because Tridon's experts "failed to render a sufficiently reliable

opinion" but, rather, provide nothing more than "mere *ipse dixit* opinions." (D.I. 36; D.I. 37 at 1-

2)

Specifically, Willis contends that the experts' report is (1) based on "non-existent or

inaccurate factual" data; (2) "ignores key business data;" and (3) "rel[ies] on unsubstantiated

guesstimates of alleged profitability." (D.I. 37 at 8-10)

Willis cites to two factual inaccuracies as support for its first argument: the experts

5

incorrectly stated the dissolution date of Tridon as late 2012 rather than early 2013 and
incorrectly stated the number of trucks in Tridon's fleet. (D.I. 37 at 8; D.I. 46 at 4)  Willis does
not, however, explain how these two factual mistakes undermine the experts' opinion of lost
profits; nor is it even clear that the two mistaken "facts" were used by the experts in the
calculation of damages. (*See generally* D.I. 37-2 at A1-4)

With regard to the second argument, Willis cites to deposition testimony from Tridon's
CEO, Ms. Yannessa, to call into doubt the accuracy of the experts' assessment of the recession's
impact on Tridon's profits. (D.I. 37 at 9)  Willis further contends that the experts had better data
at their disposal and should have used it to determine the profits generated by the Truck. (*Id* at 9-
10)  But even if this premise is accepted, it does not render the challenged expert report
inadmissible under Rule 702.  To the contrary, "[t]he grounds for the expert's opinion merely
have to be good, they do not have to be perfect." *In re Paoli*, 35 F.3d at 744.  The "ultimate
touchstone is helpfulness to the trier of fact, and with regard to reliability, helpfulness turns on
whether the expert's 'technique or principle [is] sufficiently reliable so that it will aid the jury in
reaching accurate results.'" *Id.*

Finally, Willis faults Tridon's experts for relying on Ms. Yannessa's undocumented
opinion of the Truck's profit margin, an opinion Ms. Yannessa stated was merely "conceivable,"
leading Willis to conclude the experts' opinion is unreliable because "[c]onceivable is not within
a reasonable degree of economic certainty.  Conceivable is not certain at all, but rather admits it
may or may not be accurate." (D.I. 37 at 10; *see also* D.I. 37-2 at A3)  Again, Willis' contention
is unavailing.  In their report, the experts use Ms. Yannessa's opinion as to the profitability of the
truck to assess the *maximum* amount of lost profits Tridon may have suffered, along with lower

profitability numbers gleaned from revenue history, Tridon's tax returns, and industry data. (D.I. 37-2 at A1-4) In context, the challenged opinion is not "unreliable" and inadmissible. Instead, Willis' concerns can be adequately addressed at trial through cross-examination of Tridon's experts as well as the presentation of competing evidence.

The Court concludes that Willis' concerns with the experts' report go to the weight to be accorded to them by the fact finder, not their admissibility. Willis' motion to strike will be denied.

## II.    Willis' Motion for Summary Judgment

Willis asks this Court to grant summary judgment against Tridon based on two arguments: (1) Tridon has not produced sufficient evidence under Delaware law to support its claim for property damage; and (2) Tridon's economic loss claim is untenable because it is impermissibly speculative and not the appropriate measure of damages for loss of a vehicle. (D.I. 39 at 2) Willis also asks the Court to dismiss Tridon Holdings and Tridon Leasing for lack of standing. (D.I. 39 at 11-12) The Court will grant Willis' motion with regards to the standing issue, and dismiss Tridon Holdings and Tridon Leasing as plaintiffs.[3] For the reasons below, the Court will grant Willis' motion with regard to the property damages claim, but deny Willis' motion with regard to the economic losses claim.

### A.    Property Damages

Where tortious conduct has caused property damage, Delaware law states that the appropriate measure for damages is "the difference between the fair market value of the property

---

[3]Tridon concedes that only Tridon Industries, Inc. is the proper party to the action and also asks the Court to dismiss Tridon Holdings and Tridon Leasing. (D.I. 42 at 6) Therefore, the Court does not address the standing issue in detail.

7

before the imposition of the damaging element and the fair market value of the property after the damage occurred." *Bd. of Educ. of Caesar Rodney Sch. Dist. v. New Castle Roofing & Waterproofing, Inc.*, 2001 WL 1456870, at *2 (Del. Super. Aug. 29, 2001) (internal citation omitted); *see also Alber v. Wise*, 166 A.2d 141, 143 (Del. 1960). In addition, these values "must necessarily be produced directly from an expert witness." *Storey v. Castner*, 314 A.2d 187, 192 (Del. 1973).

Willis argues that "because Tridon . . . has no expert valuation of the property claimed to be damaged in the [a]ccident, it cannot satisfy the essential elements of a property damage claim." (D.I. 39 at 13)  Tridon does not offer any such evidence into the record, but rather counters this argument by stating that "Tridon personnel . . . are perfectly competent to testify . . . that the equipment in question was damaged or otherwise unusable to Tridon as a result of the accident." (D.I. 42 at 8)  Tridon also argues that by "appraising the Tridon Truck," Willis' insurance provider "assumed a duty to appraise the equipment as well." (D.I. 42 at 7)

The Court concludes that Tridon has failed to raise a genuine dispute of material fact with regards to its claim for damages to equipment, and therefore will grant Willis' motion for summary judgment with regard to this damages claim.  Tridon provides no expert evidence on damages to the equipment.  Tridon cites to no Delaware law to support the theory that Willis is estopped from making the argument that Tridon must present expert testimony on equipment damages because Willis' insurance carrier had a duty to appraise the equipment. (*See* D.I. 42 at 7)

Accordingly, the Court finds that Plaintiff has not met its burden to show a genuine dispute of fact, and Willis' motion with respect to Plaintiff's claim for equipment damages will

be granted.

## 2.     Business Losses

Delaware law does not allow a recovery for damages that "[are] merely speculative or conjectural." *Henne v. Balick*, 146 A.2d 394, 396 (Del. 1958). The Delaware Supreme Court has delineated the line between speculative damages and allowable damages as follows:

> As a general rule, [the law] refuses to allow a plaintiff damages relating to the future consequences of a tortious injury unless the proofs establish with reasonable probability the nature and extent of those consequences. There must be some reasonable basis upon which a jury may estimate with a fair degree of certainty the probable loss which plaintiff will sustain in order to enable it to make an intelligent determination of the extent of this loss. The burden is upon the plaintiff to furnish such proof. If he fails in this respect, the jury cannot supply the omission by speculation or conjecture. The fact that there is some uncertainty as to plaintiff's damage or the fact that the damage is very difficult to measure will not preclude a jury from determining its value.

*Id.* (internal citations omitted).

Willis argues: "Tridon has failed to present a sufficient connection between its profits and the alleged damage sustained to the masonry foam truck and equipment." (D.I. 39 at 16) Willis analogizes Tridon's claim (D.I. 39 at 16-17) for lost business to that involved in *Bradshaw v. Trover*, where a plaintiff was injured in an accident while driving a vehicle used to transport supplies for her cleaning business. 1999 WL 463847, at *1 (Del. Super. Apr. 30, 1999). The court held there that while the plaintiff could introduce evidence of lost business damages pertaining to a current one year contract allegedly lost as a result of the accident, she could not introduce evidence showing her lost profits from the failure to renew that contract in future years. *See id.* at *3.

9

Willis argues that, like the plaintiff in *Bradshaw*, Tridon's claim for lost profits is similarly speculative. (D.I. 39 at 7, 15) The Court does not agree. *Bradshaw* did not hold that damages are *per se* too speculative merely if they relate to the possibility of obtaining future business. Instead, *Bradshaw* found that the plaintiff's damages claim there was tenuous in the context of that plaintiff's particular business history. *See* 1999 WL 463847, at *2-3. Tridon's contentions are not similarly tenuous, particularly as it has produced evidence that it was insured (*see generally* D.I. 43-1, 43-2 (containing Selective Insurance Policy)); it attempted after the accident to use a rental truck to continue its business and fulfill its remaining contracts (*see* D.I. 37-2 at A56); and it has provided an expert's report to detail its losses (D.I. 41-1 at A1-4).

Therefore, Willis' motion for summary judgment with respect to Tridon's claim for business losses will be denied.

## CONCLUSION

For the foregoing reasons, the Court will deny without prejudice Willis' Motion *in limine* to Preclude Reference (D.I. 34); deny Willis' Motion to Strike Plaintiff's Economic Experts' Report (D.I. 36); and grant in part and deny in part Willis' Motion for Summary Judgment. (D.I. 38) An appropriate order has been entered.